**In re VOLUNTARY PURCHASING GROUP, INC., Debtor.**

**Bankruptcy No. 96–31549.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Feb. 17, 1999.

---

James Patrick Kelly, Ireland, Carroll & Kelly, Tyler, TX, for debtors.

David W. Elrod, Calhoun & Stacy, PLLC, Dallas, TX, for Southern Pacific Transportation Company and St. Louis Southwestern Railway Company.

## OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court is the Second Application of Price Waterhouse, LLP As Financial Advisors, Consultants And Accountants To The Official Committee of Unsecured Creditors of Voluntary Purchasing Groups, Inc., For Interim Allowance of Compensation For Services Rendered and Reimbursement of Expenses Incurred From October 1, 1996 Through December 31, 1997 (the "Application"). This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Voluntary Purchasing Group ("the Debtor" or "VPG"), filed for relief under Chapter 11 of the Bankruptcy Code on June 10, 1996. Thereafter, on July 1, 1996, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code. The Committee filed an application with this Court to approve employment of Price Waterhouse, LLP ("Applicant") as its accountants in the within proceeding. This Court entered its Order authorizing Applicant's employment effective retroactively to August 8, 1996 on September 20, 1996.

The immediate precipitating cause for the bankruptcy filing for VPG was the tremendous cost of defending lawsuits brought against VPG and other parties growing out of environmental claims. There were numerous class action lawsuits for personal injuries from exposure to toxic substances as well as actions by governmental regulatory agencies dealing with toxic pollution. The claims and potential claims in this case are extensive; the financial issues have been complex and litigation has been extensive. Despite the controversies, the Order Confirming Voluntary Purchasing Group's First Plan of Reorganization, as modified, was entered of record on or about June 29, 1998.

Applicant filed its first interim application for compensation and reimbursement of expenses on December 10, 1996, which was subsequently approved by this Court. The Second Interim Application is now before the Court. The Second Interim Application seeks compensation of $629,897.40 and expenses of $13,610.43 for the period of October 1, 1996 through December 31, 1997. During the period covered by the Application, Applicant expended 4,232.6 hours performing professional services on behalf of the Committee. Southern Pacific Transportation Company and St. Louis Southwestern Railway Company

("the Railroads") filed an Objection and Supplemental Objection to the Application complaining that the work done by Applicant was not beneficial to the estate. A hearing was held after which the matter was taken under advisement.

### DISCUSSION

The question is whether the time spent by Applicant constituted services which provided a clear benefit to the estate. *Matter of First Colonial Corp., of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). The Court has undertaken an extensive review of the Application and has carefully considered the Objections filed by the Railroads together with all testimony presented and the evidence admitted at the hearing. In addition, as requested by the parties, the Court has considered all papers and pleadings on file in this Reorganization Case. Upon review, the Court believes that Applicant's services contributed meaningfully to the plan proponents' ability to obtain confirmation of a plan of reorganization in a contentious legal environment.

The Railroads complain that portions of the Applicant's time were spent without direct benefit to the creditors of the estate. The Court disagrees with the Railroads' conclusion. VPG is a large purchasing cooperative which deals in agricultural chemicals including fertilizers, pesticides and herbicides. It had been in existence for approximately 30 years at the time of filing for relief under Chapter 11 of the Bankruptcy Code on June 10, 1996. VPG operated and still operates nationwide through a network of small locally owned merchants. It is a marketing system developed over the years to allow local merchants to better compete by merging their buying power through the cooperative. In terms of the size of its operation, VPG has a relatively small amount of fixed assets and the only tangible assets of significant value consist of the inventory stored in various warehouses around the country.

The primary value to VPG is now and always has been its network of loyal dealers across the country. In that regard, the corporate structure and commercial dynamic of the Debtor are unusual. VPG's success, notwithstanding the litigation that forced it to its knees as a business, derived from the network of relationships in the communities which it served and from the high levels of motivation and satisfaction among its distributors and clientele. It is difficult for one steeped in traditional accounting methods to diverge from standard, "comfortable" analytical conventions in order to adapt such approaches to VPG's marketing scheme. VPG's situation and prospects could not be analyzed by the same method as a company with fixed assets e.g., with respect to depreciation or conventional liquidation. To have attempted to do so would have been a meaningless effort. Therefore, although the Railroads may quarrel with the conclusions Applicant reached in its analysis, this Court believes that Applicant's efforts in reaching those conclusions were necessary given that it was forced to solve problems that did not fit into a standardized mold.

The Railroads assert other allegations in their Objections that were simply not supported by the evidence at the hearings, in particular with respect to manipulation by Applicant of the balloting. Certainly, in a case of this magnitude, the job of classifying ballots is a difficult one and may lead to imperfections. This Court believes that any imperfections in tallying the ballots were inconsequential given the task and the results. Further, this Court believes that the Railroads' contentions regarding impropriety of evidence introduced regarding the master ballots reflects the Railroads' misunderstanding of the purposes underlying class action litigation. Based upon the record and the evidence, the Court finds that, except as indicated hereinbelow with respect to designated reductions, the Railroads' assertions in the Objection and Supplemental Objection have

no merit. Accordingly, the Court hereby finds the following:

■ Based on the size and complexity of the case, the Court will allow a maximum rate of $250.00 per hour for partners and directors in the firm and $50.00 per hour for paraprofessionals. Therefore, the Court has reduced the fees allowed for the services of J.R. Medlin, V.W. Bratic, J.W. Witte, C. Peshel, A.S. Conly, M.B. Napoliello, B.C. Kimmey, J.E. Parker, J.S. Presley, P.B. Stewart and A.C. Vance accordingly.

■ The Court will not allow compensation in instances where the services performed by the professional are in the nature of overhead or could be performed by a non-billing or lower billing professional. Accordingly, the Court has reduced the fees sought for services performed by T.L. Reed, a secretary, for a total reduction of $715.00 and the Court has reduced the expenses for temporary staff in connection with ballot tabulation for a reduction of $1,904.75. In addition, the Court has reduced the fees sought for services performed by D.S. Sides by 96.50 hours [96.50 @ $120.00 =$11,580.00] of the total 474.90 billed, because the services rendered by the billing accountant are the type that could be performed by a data entry clerk or clerical staff. Specifically, Applicant requested reimbursement for "inputting ballots in database" and "organizing binders". The foregoing resulted in a reduction of $11,580.00.

The Court finds that the other expenses were appropriate.

■ The Court will not allow compensation in instances when the amount of time spent to perform a task is excessive given the value to the estate of such task. Applicant seeks $35,508.50 for its services performing claims analysis. Applicant spent approximately 428.9 hours in its claims review process during the period covered by the Second Application. The Court recognizes that a significant expenditure of time and labor was required to review the 2730 proofs of claims filed in the within proceeding. The Court likewise recognizes the Railroads' Objection that the claims review process failed to identify some 440 objectionable claims filed by tort claimants and/or their counsel. The 440 claims were duplicate claims and claims that were settled at the time the case was filed, but were erroneously included in the balloting process. To the extent such failure reduced the value of the Applicant's services to the creditors of this estate, the Court has reduced the amount allowed for fees incurred in connection with the claims review process by $5,723.97. $5,723.97 is an amount assigned by this Court as an appropriate, proportional amount of the total sought; it corresponds to the 16.12% portion of the "problem" claims [440] to the total body of claims filed [2730].

### CONCLUSION

The Court, having considered Applicant's Second Application with respect to the twelve factors set forth in *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), finds that Applicant's services and expenses were actual, reasonable, necessary and provided value to the estate and its creditors.

■ For the reasons stated above, the Court believes that Applicant's request should be granted in the amount of $561,-447.03 for professional services and $11,-705.68 as reimbursement for costs and expenses, for a total interim award of $573,152.71.